UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 01-1411(DSD/SRN)

Robert I. Greenberg,

Plaintiff,

v. **ORDER**

City of St. Paul, Christopher Coleman, Jerry Blakey, Pat Harris, Jim Reiter, and Dan Bostrom, all in their personal and official capacities,

Defendants.

Jordan S. Kushner, Esq., Kushner Law Office, 636 Sexton Building, 529 Seventh Street South, Minneapolis, MN 55415, counsel for plaintiff.

Gail L. Langfield, St. Paul City Attorney, 550 City Hall, 15 West Kellogg Boulevard, St. Paul, MN 55102, counsel for defendants.

This matter is before the court on defendants' motion for summary judgment [Docket No. 8]. Based on a review of the file, record, and proceedings herein, and for the reasons stated, the court grants defendants' motion in its entirety.

## BACKGROUND

Plaintiff, Robert Irwin Greenberg, has dedicated most of his professional and personal life to community and political activism.

FILED 8-20-02
RICHARD D. SLETTEN, CLERK
Judgment Ent'd. 8-20-02
Deputy Clerk's Initials

In 1999, plaintiff was involved in a protest concerning the expansion and the re-route of Highway 55 in Minneapolis, Minnesota. On March 30, 1999, plaintiff pushed a pie into State Senator Carol Flynn's face to protest Flynn's decision not to hear a resolution regarding Highway 55. Plaintiff was arrested and later found guilty of disturbing the legislature or intimidating a member thereof, and of disorderly conduct. Although plaintiff contested his conviction on First Amendment grounds, both the district court and the appellate court found that the conviction did not violate plaintiff's First Amendment rights. (Langfield Aff. Ex. F and G.) Plaintiff then abandoned his appeal.

In 2001, the Payne/Phalen District 5 Council, a neighborhood community organization established by the St. Paul City Council, sought to hire an executive director.[1] Plaintiff applied for the position and the executive committee of the District Council recommended to the full board that plaintiff be hired for the position. On May 22, 2001, that recommendation came before the board. After discussing plaintiff's qualifications and his prior conviction, the full board voted 7 to 6 in favor of hiring plaintiff. (Dawkins Decl.)

On May 23, 2001, St. Paul City Council member Chris Coleman learned of the District Council's decision to hire plaintiff.

---

[1] Though created by the City Council, the District Council is an established nonprofit corporation. (Hammer Aff. ¶ 3.)

Coleman alleges that he was then approached by a member of the District Council who expressed concerns about the disclosure of plaintiff's conviction prior to the board's decision to hire him. Coleman subsequently drafted a resolution to suspend funding to the District 5 Council pending an investigation of the process and procedures surrounding plaintiff's hiring. While discussing that resolution, City Council members expressed concern about plaintiff's previous conduct toward members of the legislature. (Langfield Aff. Ex. L.) Defendant City Council members passed the resolution. (Id.)

The District 5 Council held a special meeting on May 31, 2001, and voted to rescind its motion to offer employment to plaintiff. (Dawkins Decl.) On June 13, 2001, the City Council passed a resolution to repeal the suspension of funding to the District 5 Council. (Kushner Decl. Ex. 2, Coleman Dep. Ex. 4.)

In July, 2001, plaintiff initiated this action against the five members of the St. Paul City Council who voted in favor of the resolution to suspend funding to District 5. Plaintiff alleges that, in violation of 42 U.S.C. § 1983, defendants deprived plaintiff of (1) his procedural due process rights, (2) his substantive due process rights, (3) his equal protection rights, (4) his rights under the Fourteenth Amendment Privileges and Immunities Clause and (5) his free speech rights. Plaintiff also alleges that defendants intentionally interfered with his contract

for employment. Defendants now bring a motion for summary judgment on each of those claims and the court grants defendants' motion.

## ANALYSIS

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party bears the burden of demonstrating to the court that no genuine issue of material fact exists. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). A fact is material only when its resolution affects the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. See id. at 252.

On a motion for summary judgment, all evidence and inferences are to be viewed in the light most favorable to the nonmoving party. See id. at 255. The nonmoving party, however, may not rest upon mere denials or allegations in the pleadings, but must set forth specific facts sufficient to raise a genuine issue for trial. See Celotex, 477 U.S. at 324. Moreover, if a plaintiff cannot support each essential element of its claim, summary judgment must be granted because a complete failure of proof regarding an essential element necessarily renders all other facts immaterial.

See id. at 322-23. With this standard at hand, the court considers the defendants' motion for summary judgment.

## I. Section 1983

Plaintiff brings several claims under § 1983. To state a claim under § 1983, plaintiff must show that (1) defendants operated under color of state law, (2) that plaintiff was denied a right granted under the United States Constitution or a federal statute and (3) a direct causal link between defendants' actions and the deprivation of the right. 42 U.S.C. § 1983; Hoekstra By and Through Hoekstra v. Indep. Sch. Dist. No. 283, St. Louis Park, Minn., 915 F. Supp. 941, 945-46 (D.Minn. 1996). The court concludes that plaintiff's § 1983 action fails because plaintiff has failed to establish that he was denied a right under the Constitution or any federal statute.

### A. Procedural Due Process Claim[2]

The Fourteenth Amendment's Due Process Clause protects every individual against the deprivation of life, liberty and property without due process of law. U.S. Const. Amendment XIV, § 1. Procedural due process requires the deprivation of a life, liberty or property interest. Board of Regents of State Colleges v. Roth,

---

[2] At the summary judgment hearing, plaintiff's counsel unambiguously stated that plaintiff is not asserting a procedural due process claim. He clearly states: "I think I made it clear. We are not bringing a procedural due process claim." However, because plaintiff's complaint, (Compl. ¶ 23), and papers allege a procedural due process claim, the court nonetheless addresses the claim.

408 U.S. 564, 569 (1972). In the employment context, to find that a liberty interest has been infringed upon, a court must find that the employer has seriously damaged the employee's standing and associations in the community. Id. at 573. To find that a property interest has been infringed upon, the employee must have a legitimate claim of entitlement to his employment. Id. at 577. A unilateral expectation of employment is not enough to create a property interest. Id. Moreover, showing that one was not rehired in a particular job does not amount to a liberty or property interest. Perry v. Sindermann, 408 U.S. 593, 599 (1972), *overruled in part on other grounds by* Rust v. Sullivan, 500 U.S. 173 (1991).

The Due Process Clause does protect individuals from third parties who interfere with their private employment relationships. See Chernin v. Lyng, 874 F.2d 501, 504 (8th Cir. 1989). The Eighth Circuit has recognized the procedural due process right of at-will employees to be free from arbitrary government interference with their employment relations. See Chernin, 874 F.2d at 505(finding an employee's rights were violated when government agency refused to provide inspection services unless employee was terminated); Waddell v. Forney, 108 F.3d 889, 893-94 (8th Cir. 1997)(finding that an employee was deprived of due process rights when he was terminated because of government agency's demands); Helvey v. City of Maplewood, 154 F.3d 841, 844 (8th Cir. 1998)(finding that an employee stated due process claim that city manager demanded

employee's discharge in retaliation for her testimony against police officers). However, the recognition of this right depends on the finding of an employment relationship. See id.

In order to create a contract, an offer that is definite in form must be communicated to the offeree. Pine River State Bank v. Mettille, 333 N.W.2d 622, 626 (Minn. 1983). Whether a proposal is considered an offer is determined by the parties' outward manifestations. Id. An employer's general statements do not satisfy the contractual requirements for an offer. Id. Further, an offerer of a unilateral contract always retains the power to modify or revoke the offer so long as the offeree has not begun performance. Feges v. Perkins Restaurants, Inc., 483 N.W.2d 701, 708 (Minn. 1992).

Here, plaintiff claims that defendants denied him procedural due process by passing a resolution suspending funding to the District Council. Although the District Council may have voted to hire him, plaintiff presents no evidence suggesting that an offer was ever communicated to him. If no offer was made, there could have been no employment agreement. See Pine River, 333 N.W.2d at 626. The lack of any agreement is further evidenced by the recission of the motion to hire plaintiff at the District Council's next meeting.[3] (See Dawkins Decl.) Moreover, even if there had

[3] Moreover, the District Council did not pass a resolution to terminate plaintiff as originally proposed. Instead, the original (continued...)

been an offer and acceptance, plaintiff had not begun performing on the agreement since the email messages he claims as performance were dated June 4, 2001, after the District Council rescinded its motion, and were sent before plaintiff sent his letter of acceptance. (See Kushner Decl. Ex. 1, Greenberg Dep. Ex. 1; Dawkins Decl.) Further, plaintiff's own counsel declined to argue that an employment relationship existed when the City Council suspended funding to District 5.[4] The court therefore finds no employment relationship between plaintiff and the District Council.

Since no evidence suggests an employment relationship existed, plaintiff had no property interest in employment with the District Council. Similarly, the court finds no stigmatization that would infringe upon plaintiff's liberty interest in future employment. Without a property or liberty interest, plaintiff has no procedural due process claim. See Roth, 408 U.S. at 569. Therefore, the court grants defendants' motion for summary judgment on plaintiff's due process claim.

**B. Substantive Due Process Claim**

Substantive due process refers to the right of every person to

---

[3](...continued) motion to accept the executive committee's recommendation to hire plaintiff was rescinded. (See Dawkins Decl.)

[4] In fact, when specifically asked about the employment relationship, plaintiff's counsel erroneously claimed that the whether an employment relationship existed was irrelevant to the constitutional claims.

be free from government interference with certain fundamental rights and liberty interests. Washington v. Glucksberg, 521 U.S. 702, 720 (1997). The Supreme Court has been reluctant to expand the concept of substantive due process. Collins v. City of Harker Heights, Tex., 503 U.S. 115, 125 (1992). The Court "exercise[s] the utmost care whenever...asked to break new ground in this field." Washington, 521 U.S. at 720. Therefore, to prevail on a substantive due process claim, a plaintiff must claim both a fundamental right that is "deeply rooted in this Nation's history and tradition," id. at 720-21, and a violation of that right that was so wrongful as to "shock the conscience." Rochin v. California, 342 U.S. 165, 172 (1952).

Analysis of any substantive due process claim begins with an examination of the interest allegedly violated. Singleton v. Cecil, 176 F.3d 419, 424 (8th Cir. 1999). Traditionally, to be treated as a fundamental right, the interest claimed should involve "the individual's freedom of choice with respect to certain basic matters of procreation, marriage, and family life." Harrah Indep. Sch. Dist. v. Martin, 440 U.S. 194, 198 (1979). Courts have declined to recognize a right to employment as fundamental. See Harrah, 440 U.S. at 199; Singleton, 176 F.3d at 428. In particular, in Singleton, the Eighth Circuit Court of Appeals explained that "'occupational liberty' should not be used as a vehicle for a federal court to interfere with employment decisions

under the rubric of substantive due process."[5] 176 F.3d at 428. The court therefore held that "any cause of action for the deprivation of occupational liberty is confined to a claim under procedural due process; there is no such cause of action under substantive due process." Id.

Here, plaintiff claims he was deprived of his substantive due process rights by defendants' resolution suspending funding to the District Council pending an investigation of its hiring practices. However, as noted in Singleton, occupational liberty is not a protected right under substantive due process.[6] 176 F.3d at 428. The court therefore concludes that plaintiff has alleged no recognized fundamental right and grants defendants' motion for summary judgment on plaintiff's substantive due process claim.

**C. Equal Protection Claim**

The Equal Protection Clause of the Fourteenth Amendment commands that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amendment XIV, § 1. It requires that all similarly situated

---

[5] According to the court, every discharge arguably would constitute the deprivation of an employee's occupational liberty, and each discharged employee could assert a substantive due process claim by merely alleging that his discharge was effected by the government for arbitrary or irrational reasons. Singleton, 176 F.3d at 428, n. 10. The court found such a result contrary to the Supreme Court's holdings regarding employment. Id. at 428.

[6] The court, having intimate knowledge of the facts and procedural posture of Moran v. Clarke, 2002 WL 1446740 (8th Cir. 2002), believes that that case is distinguishable on its facts.

persons be treated alike. City of Cleburne, Tex. v. Cleburne Living Center, 473 U.S. 432, 439 (1985). Dissimilar treatment of dissimilarly situated persons does not violate the right to equal protection. Klinger v. Dept. of Corrections, 31 F.3d 727, 731 (8th Cir. 1994). Therefore, the first step in analyzing an equal protection claim is to determine whether the plaintiff has been treated differently than others who are similarly situated to him.[7] Id.

While plaintiff vaguely alleges that defendants did not take similar action against similarly situated persons (Langfield Aff. Ex. M), he provides no evidence of the identities of any similarly situated persons or of the instances of disparate treatment. Because plaintiff must set forth specific facts sufficient to raise a genuine issue for trial, see Celotex, 477 U.S. at 324, and has not done so, the court grants defendants' motion for summary judgment on plaintiff's equal protection claim.

**D. Privileges and Immunities Claim**

The Privileges and Immunities Clause of the Fourteenth Amendment protects the rights inherent in United States citizenship against infringement by the states. See U.S. Const. Amendment XIV, § 1; Saenz v. Roe, 526 U.S. 489, 502-3 (1999). The right to peaceably assemble and the right to travel have been recognized as

[7] Without a threshold showing that he is similarly situated to someone who has received favorable treatment, the plaintiff does not have a viable equal protection claim. Klinger, 31 F.3d at 731.

such rights. See Hague v. Comm. for Indus. Org., 307 U.S. 496, 512 (1939); Saenz, 526 U.S. 489, 503. However, the right to engage in employment has not been recognized as a right inherent in national citizenship. See Madden v. Kentucky, 309 U.S. 83, 92-3 (1940)("the right to carry out an incident to a trade, business or calling such as the deposit of money in banks is not a privilege of national citizenship."). Because plaintiff offers no argument for an expansion of the Privileges and Immunities Clause to include the right to engage in employment, and because the court finds such an expansion improper, the court grants defendants' motion for summary judgment on plaintiff's privileges and immunities claim.

**E. Free Speech Claim**

Once a court has decided an issue of law or fact, the doctrine of collateral estoppel precludes relitigation of that issue in a subsequent cause of action involving a party to the first case. Allen v. McCurry, 449 U.S. 90, 94 (1980). For collateral estoppel to apply (1) the issues in the prior and present adjudication must be identical, (2) there must have been a final adjudication on the merits, (3) the estopped party must be a party or be in privity with a party to the prior adjudication and (4) the estopped party must have been given a fair and full opportunity to be heard on the adjudicated issue. Oldham v. Pritchett, 599 F.2d 274, 279 (8th

Cir. 1979). Collateral estoppel may be applied to civil actions brought under § 1983 whether the first court decision was criminal or civil. See Allen, 449 U.S. at 97.

Here, plaintiff claims that the suspension of funding to the District Council based on plaintiff's previous "statement" of pushing the pie into Senator Flynn's face violated his right to free speech. However, the state court that convicted plaintiff found that plaintiff's conduct was not protected by the First Amendment and the appellate court affirmed this finding. (Langfield Aff. Ex. F and G.) The issue of whether plaintiff's conduct was covered by the First Amendment is the exact issue brought in the present claim, and the upheld criminal conviction constitutes a final adjudication on the merits of the issue. Moreover, it is clear from the record that plaintiff took full advantage of the opportunity to claim his First Amendment rights during his criminal trial and subsequent appeal. (Langfield Aff. Exs. C, D, E, F, and G.) Thus, based upon the doctrine of collateral estoppel, the court grants defendants' motion for summary judgment on plaintiff's First Amendment claim.[8]

---

[8] Even if the doctrine of collateral estoppel did not apply in this case, the court concludes that plaintiff's conduct was not protected by the First Amendment. See Wisconsin v. Mitchell, 508 U.S. 476, 484 (1993)("a physical assault is not by any stretch of the imagination expressive conduct protected by the First Amendment.")

## II. Other Claims

### A. Interference with Contractual Relations Claim

To support a cause of action for intentional interference with contractual relations, a plaintiff must show (1) the existence of a contract, (2) the alleged wrongdoer's knowledge of the contract, (3) intentional procurement of its breach, (4) without justification and (5) damages. Harman v. Heartland Food Co., 614 N.W.2d 236, 241 (Minn. App. 2000). On a motion for summary judgment, a plaintiff must support each essential element of a claim with specific facts sufficient to raise a genuine issue for trial. See Celotex, 477 U.S. at 324.

Here, as discussed, plaintiff has provided the court with no evidence of any definite offer of employment communicated to him by the District Council. Without an offer, there can be no contract. See Pine River, 333 N.W.2d at 626. Further, without performance by the plaintiff, any offer could have been revoked at any time. Feges, 483 N.W.2d at 708(an offerer of a unilateral contract always retains the power to modify or revoke the offer so long as the offeree has not begun performance). Even if there had been an agreement, plaintiff has not provided the court with evidence of improper means.[9] The court finds that plaintiff has not supported

[9] "An action for interference with contract does not lie where the alleged interferer has a legitimate interest, economic or otherwise, in the contract or expectancy sought to be protected and employs no improper means." Harman, 614 N.W.2d at 241.

the elements of this claim with genuine evidence, and therefore grants defendants' motion for summary judgment on plaintiff's claim of intentional interference with contractual relations.

## CONCLUSION

Accordingly, **IT IS HEREBY ORDERED** that

1. Defendants' motion for summary judgment [Docket No. 8] is granted in its entirety; and

2. Plaintiff's claims are dismissed with prejudice.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: August 20, 2002

David S. Doty, Judge
United States District Court

# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

## CIVIL NOTICE

The purpose of this notice is to summarize the time limits for filing with the District Court Clerk's Office a Notice of Appeal to the Eighth Circuit Court of Appeals from a final decision of the District Court in a civil case.

> ***This is a summary only. For specific information on the time limits for filing a Notice of Appeal, review the applicable federal civil and appellate procedure rules and statutes.***

Rule 4(a) of the Federal Rules of Appellate Procedure (Fed. R. App. P.) requires that a Notice of Appeal be filed within:

1. Thirty days (60 days if the United States is a party) after the date of "entry of the judgment or order appealed from;" or

2. Thirty days (60 days if the United States is a party) after the date of entry of an order denying a timely motion for a new trial under Fed. R. Civ. P. 59; or

3. Thirty days (60 days if the United States is a party) after the date of entry of an order granting or denying a timely motion for judgment under Fed. R. Civ. P. 50(b), to amend or make additional findings of fact under Fed. R. Civ. P. 52(b), and/or to alter or amend the judgment under Fed. R. Civ. P. 59; or

4. Fourteen days after the date on which a previously timely Notice of Appeal was filed.

If a Notice of Appeal is not timely filed, a party in a civil case can move the District Court pursuant to Fed. R. App. P. 4(a)(5) to extend the time for filing a Notice of Appeal. This motion must be filed no later than 30 days after the period for filing a Notice of Appeal expires. If the motion is filed after the period for filing a Notice of Appeal expires, the party bringing the motion must give the opposing parties notice of it. The District Court may grant the motion, but only if excusable neglect or good cause is shown for failing to file a timely Notice of Appeal.

# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

### Prehearing Conference Program

The United States Court of Appeals for the Eighth Circuit has established an early intervention Prehearing Conference Program. The purpose of the program is twofold: (1) to facilitate settlement discussions in civil cases by providing an impartial atmosphere for an open discussion of the case and alternative methods of disposition and (2) to promote the delineation of issues, early resolution of procedural problems, and effective administration of an appeal throughout the appellate process. See 8th Cir. R. 33A.

The program is directed by Mr. John Martin. Mr. Martin screens newly filed appeals based on information furnished by both appellants and appellees in the court's Appeal Information Forms A and B. Contact with counsel is by telephone and in personal conferences held in several cities throughout the Circuit. All communications with Mr. Martin are confidential. Counsel can openly discuss and evaluate the issues and explore alternatives in a non-adversarial setting without fear that the subsequent processing of the appeal or ultimate disposition of the case will be adversely affected by participation in the program.

Participation in the program is voluntary. However, the Court strongly encourages your participation and cooperation. Over the past twenty years, the program has enabled many appellate litigants to achieve mutually satisfactory resolution of certain issues or an overall settlement prior to progressing through all stages of the appellate process. Issue delineation enables counsel to focus only on those issues that need judicial resolution. The program has helped relieve the ever-increasing caseload confronting the Court, and it has also saved litigants and attorneys substantial amounts of time and money.

In order for the program to function effectively certain information <u>must</u> be provided at the initiation of the appeal. *Eighth Circuit Rule 3B directs each civil appellant to: (1) file a completed Appeal Information Form A with the Notice of Appeal at the time the Notice is filed with the District Court clerk and (2) forward a copy of the completed Form A and a copy of Appeal Information Form B to the appellee for completion.* Appellee may complete Form B and send it to the clerk of the Court of Appeals. If you have any questions about the Prehearing Conference Program or the Appeal Information Forms, please contact Mr. Martin at (314)-539-3669.

Forms A and B are available from the District Court clerk and the Court of Appeals clerk and can be found at the Court of Appeals' web site at: www.ca8.uscourts.gov

*June 1, 2000*

Forms/8thcircuitprehearingconf.wpd